## THE PEOPLE v. LEOPOLD DUNKEL.

*Endangering the lives of railway employees.*

Shooting at a brakeman is cognizable by the general criminal law, and is not within the provision of the general railroad law to punish acts willfully endangering the lives of railway employees or travelers.

Exceptions from Cass. Submitted June 19. Decided October 9.

INFORMATION for endangering the life of a railroad employee. Respondent was convicted below.

Attorney General *Otto Kirchner* for the people.

*Joseph B. Clarke* and *Spafford Tryon* for respondent. Statutory crimes must come within the intent of the statute, 1 Bish. Crim. Law (2d edition), §§ 140, 144.

COOLEY, J. The information was filed under section twelve of article four of the act of 1873, "to revise the laws providing for the incorporation of railroad companies," etc. 1 Sess. Laws, 1873, p. 496, 537. The section is as follows:

"Sec. 12. If any person shall, by the placing of any impediment upon the track of any railroad, or by any other means whatsoever throw from said track any engine or cars used thereon, or attempt so to do, whether such engine or cars be thrown from said track or not, or shall by any other means whatsoever willfully endanger or attempt to endanger the lives of persons engaged in the work of said road, or persons traveling on the engine or cars of said road, he shall be subject to imprisonment in the State Prison during his natural life, or any number of years, in the discretion of the court. And it shall not be necessary for the People to allege or prove in any such case that the person thereby intended to injure or endanger the life of any particular person or persons."

No serious question seems to be made of the criminal conduct of defendant; but whether it is an act within the statute is the point in dispute. The information contains four counts, the first three of which are intended to charge a completed offense under the statute, and the fourth a felonious attempt. For the purposes of this case it will be sufficient to give the first count, which is copied in the margin. *

---

* "CASS COUNTY—SS.

Harsen D. Smith, prosecuting attorney in and for the county of Cass aforesaid for and in behalf of the People of the State of Michigan, comes into said court at the September term thereof, A. D. 1877, and gives the court here to understand and be informed that heretofore, to wit, on the 6th day of September, A. D. 1877, at the township of Wayne in the county aforesaid, the Michigan Central Railroad Company, being a corporation duly organized under the laws of said State, then and there owned, used and operated a railroad called the Michigan Central Railroad, which said railroad did then and there run through said township of Wayne in the county aforesaid, and that on said last named day said Michigan Central Railroad Company ran and operated a train of its cars over its said road through the said township of Wayne aforesaid, consisting of passenger coaches and an engine and other cars, which said coaches at the time then and there contained a large number of persons traveling over said road, and other persons engaged in the work of said road, and that one Leopold Dunkel, then and there, as said train of cars was passing through said township of Wayne, in the county aforesaid, over its said track in said township, did willfully endanger the lives of said persons traveling on said cars and coaches of said road and the lives of said persons engaged in the work of said road, by then and there shooting and discharging a pistol loaded with powder and a leaden ball at the said persons on said train of cars as aforesaid, and did then and there shoot at said persons on said train, thereby willfully endangering the lives of said persons on said train as aforesaid contrary to the statute in such case made and provided."

The evidence on which a conviction was obtained on this indictment showed the following facts: One night in September, 1877, as a train on the Michigan Central Railroad was passing east from Chicago, defendant entered one of the cars at Niles. When near Dowagiac he spoke to O'Kief, the conductor, and requested to be waked up when he reached that place. O'Kief told him they were near Dowagiac now and he had better not go to sleep. The next O'Kief saw of defendant they were past Dowagiac some four miles. Finding defendant asleep, or pretending to be so, O'Kief roused him up and asked where he intended to go now. He said to Dowagiac. O'Kief replied they were past Dowagiac, and inquired why he did not get off there. Defendant said he was asleep, and had something to say about his request to be waked up. The train was then near Glenwood. O'Kief told him he could get off there. He said he would if he could have a pass back to Dowagiac. This was refused to him and he refused either to pay fare for carriage farther or to get off. O'Kief thereupon called upon Hess, a brakeman, to put defendant off, which was done at the rear end of the train. Defendant showed great anger, and as Hess was about to step upon the train again defendant fired a pistol apparently aimed at Hess. There was evidence from which it might be inferred that the ball grazed the pantaloons of Hess just above the knee and struck the buffer of the car he was entering.

This was the offense for which the defendant was tried and convicted. It was a gross and probably a felonious assault, but we have not been able to convince ourselves that it was such criminal conduct as the statute of 1873 was aimed at.

For the punishment of felonious assaults where only individual injuries are intended, the common law and the previous statutes made ample provision. There was no occasion whatever for a provision like that in the Act of 1873 for the punishment of assaults with intent to kill

or maim particular persons, and their trial and punishment would not thereby in any degree be facilitated or made more certain. If the Legislature had such assaults in view in passing the Act of 1873, it is impossible to assign any sufficient reason for it.

There was, however, a class of offenses for which legislation was greatly needed; and these offenses are very well indicated by the general terms of the act. They were cases in which, for the purposes of plunder, or for the gratification of revenge upon railroad companies, or from other motives, equally criminal acts were done which threatened indiscriminate and perhaps wholesale injury to persons engaged in the management of railroad trains, or persons being transported upon them. Placing obstructions upon the track with intent to throw off the train was perhaps the most common instance of the criminal conduct for which special legislation was needed, but this was only one of many ways in which great and indiscriminate injury might be inflicted, and the statute was made general to embrace all similar cases, and not with any purpose to make new provisions for criminal assaults which were already sufficiently provided for.

To fire a pistol at a brakeman may endanger the life of a person "engaged in the work" of the railroad; but so might beating a laborer engaged in repairing its track, or any other criminal injury inflicted in a private quarrel. But such an offense is not what this statute contemplates; it has in view offenses which threaten more general injury, and in which the evil contemplated is to be accomplished, not by singling out individuals for assaults that endanger no others, but by attacks upon or interference with the track, cars, or machinery of the railroad.

We think the defendant cannot be convicted under the Act of 1873; and it must be certified to the court below that judgment should be arrested and the defendant discharged.

The other Justices concurred.