PEOPLE v BEAUDIN

Docket No. 52034. Submitted June 17, 1981, at Lansing.—Decided
    October 6, 1981.

Frederick J. Beaudin was convicted of wilfully endangering lives
    by tampering with railroad property following a jury trial in
    Huron Circuit Court, Allen E. Keyes, J. Defendant moved to
    dismiss the charges on the basis that the prosecution failed to
    establish specific intent to endanger lives and that the trial
    court erred in refusing to instruct the jury as to that specific
    intent. Defendant appeals by leave granted. *Held:*

    1. The crime of wilfully endangering lives by tampering with
    railroad property is not a specific intent crime.

    2. The statute making criminal wilful endangerment of lives
    by tampering with railroad property is not void for vagueness.

    Affirmed.

1. CRIMINAL LAW — RAILROADS — SPECIFIC INTENT.

    The crime of wilfully endangering lives by tampering with rail-
    road property is not a specific intent crime (MCL 466.12; MSA
    22.271).

2. CRIMINAL LAW — RAILROADS — CONSTITUTIONAL LAW.

    The statute making criminal wilful endangerment of lives by
    tampering with railroad property is not void for vagueness
    (MCL 466.12; MSA 22.271).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Karl E. Kraus,*
Prosecuting Attorney (by *Leonard J. Malinowski,*
Assistant Attorney General), for the people.

*John W. Smith,* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 131.
[2] 65 Am Jur 2d, Railroads § 391.

Before: T. M. BURNS, P.J., and D. E. HOLBROOK, JR., and K. B. GLASER,* JJ.

T. M. BURNS, P.J. Defendant was convicted on February 1, 1979, by a jury of wilfully endangering lives by tampering with railroad property. MCL 466.12; MSA 22.271. On March 19, 1979, he was sentenced to 36 months probation. Subsequent to being put on probation defendant committed and was convicted of an act of second-degree criminal sexual conduct. On September 17, 1979, his probation was revoked and defendant was sentenced to a term of 30 to 60 years imprisonment. He now appeals by leave granted pursuant to an order of this Court dated December 10, 1980.

Defendant's conviction arose out of an incident in which he and a friend removed four bolts that secured a railroad track north of Ubly, Michigan. Several days after this incident, a locomotive engineer felt his train lurch sideways as he was travelling over the tracks where the bolts had been removed. Returning along these same tracks on the following day, the engineer observed that the rails were not properly aligned and managed to stop the train without derailing. Although he successfully pulled the entire train over this spot at about two miles per hour, the engineer testified that, if he had passed over these tracks at the normal speed of 30 miles per hour, a serious derailment could have occurred.

Defendant's friend and accomplice, Dennis Perushki, testified at trial under a grant of immunity. He stated that in the late afternoon of May 6, 1978, he and defendant were walking along the railroad tracks when Perushki noticed a loose bolt on the track, stopped, removed it and gave it to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant, who had asked him for it. Defendant loosened three other bolts from the tracks and removed them. Perushki and defendant subsequently threw all four bolts into a river. Perushki testified that neither he nor defendant had been drinking during their walk.

Defendant testified at trial that Perushki had given him $5 to buy two bottles of wine before they went on their May 6 walk. He stated that as they were strolling along he drank one-half of a bottle of wine and Perushki drank a full bottle of wine. Defendant further stated that he saw Perushki stop and remove four bolts from a railroad track and that Perushki gave one of them to defendant, who dropped it in the river.

At the preliminary examination, defendant moved to dismiss the charges on the ground that the statute under which he was prosecuted required a showing of specific intent. The prosecutor disagreed and the magistrate, without explicitly ruling on this question, bound defendant over for trial. Following close of the proofs at trial, defendant again moved to dismiss, arguing that it was impossible to determine from the statute whether specific or general intent was required for a conviction. Defendant objected to the trial judge's refusal to instruct the jury on specific intent. He now appeals and we affirm.

The crucial issue in this appeal is whether the tampering with railroad property statute requires specific intent. That statute, MCL 466.12; MSA 22.271, provides in pertinent part:

> "If any person shall, by the placing of any impediment upon the track of any railroad, or by any other means whatsoever, throw from said track any engine or cars used thereon or attempt so to do, whether such engine or cars be thrown from said track or not, or

shall by any other means whatsoever wilfully endanger, or attempt to endanger the lives of persons engaged in the work of said road, or persons travelling on the engine or cars of said road, he shall be subject to imprisonment in the state prison during his natural life, or number of years, in the discretion of the court. And it shall not be necessary for the people to allege or prove in any such case that the person thereby intended to injure or endanger the life of any particular person or persons."

That statute has been discussed in only two cases, *People v Dunkel,* 39 Mich 255 (1878), and *People v Petheram,* 64 Mich 252, 268-279; 31 NW 188 (1887) (CAMPBELL, C.J., dissenting).

In *Dunkel,* the Supreme Court held that a felonious assault on a railroad brakeman by an irate passenger was merely a private wrong not contemplated by this statute. Rather, the statute is concerned with offenses that "threatened more general injury, and in which the evil contemplated is to be accomplished, not by singling out individuals for assaults that endangered no others, but by attacks upon or interference with the track, cars or the machinery of the railroad". 39 Mich 255, 258. Although the *Dunkel* Court did not explicitly state that general intent only was required for conviction under this statute, it speaks as if that fact was implicitly understood by the Court:

"There was, however, a class of offenses for which legislation was greatly needed; and these offenses are very well indicated by the general terms of the act. They were cases in which, for the purposes of plunder, or for the gratification of revenge upon railroad companies, or from other motives, equally criminal acts were done which threatened indiscriminate and perhaps wholesale injury to persons engaged in the management of railroad trains or persons being transported upon them. Placing obstructions upon the track with

intent to throw off the train was perhaps the most common instance of the criminal conduct for which special legislation was needed, but this was only one of many ways in which great and indiscriminate injury might be inflicted and the statute was made general to embrace all similar cases and not with any purpose to make new provisions for criminal assaults which were already sufficiently provided for." *Id.*

In the subsequent case of *People v Petheram,* the Supreme Court was concerned with the category of intent necessary to convict under the statute making it a felony to obstruct the operation of a business. In his dissenting opinion, Chief Justice CAMPBELL analogized the obstruction of the operation of a business statute to the tampering with railroad property statute before us in this case. After summarizing the facts in *Dunkel,* he characterized the Court's holding there in the following manner:

"But this Court set aside the conviction on the ground that it was an assault with intent to kill or injure the brakeman individually, out of spite against him, and was not an act aimed against the safety of the train; and that the statute was intended only to reach cases where the purpose was to do mischief which imperiled the safety of passengers and employes by reason of their connection with the train itself, and was not meant to cover offenses against persons distinct from that, and reached by other legal provisions. In other words, it was for the protection of railroads and their business, and the malice must be aimed in that direction." 64 Mich 252, 273.

As was true with the Court's opinion in *Dunkel,* the dissenting opinion in *Petheram* does not specifically address the nature of the intent required for prosecution under the instant statute. However, it appears that Chief Justice CAMPBELL believed that

only general intent was required because of the language he chose to use in describing the *Dunkel* opinion. That is, he notes that the statute was intended to proscribe conduct where "the purpose was to do mischief which imperiled the safety of passengers and employes". This language speaks only of a general intent to do the criminal act. It does not indicate that a specific intent to harm railroad employees or passengers is necessary.

In most contexts, the term "wilfully" has been recognized as meaning something less than specific intent. The standard criminal jury instructions define "wilfully", as used with respect to general property crimes, in the following manner:

"Wilfully means the person intentionally committed the act knowing it to be wrong and without just cause or excuse." CJI 22:2:28.

Although this Court held that the use of the term "wilfully" in the joyriding statute, MCL 750.413; MSA 28.645, requires a showing of specific intent to take possession of a vehicle, *People v Lerma,* 66 Mich App 566; 239 NW2d 424 (1976), the Court did so because a prior case, *People v Limon,* 4 Mich App 440; 145 NW2d 287 (1966), had found that "done wilfully" was a separate and distinct element of the joyriding statute and that the joyriding statute is only one of a class of larceny statutes which include a specific intent element. Similar considerations are not present in the case before us.

This Court in *People v Culp,* 108 Mich App 452; 310 NW2d 421 (1981), held that the term "wilfully and maliciously" in the malicious destruction of property statute requires a finding of specific intent; however, the reasons in *Culp* do not lead to such a similar conclusion in this case. As was

noted by this Court in *Culp,* the malicious destruction of property statute is merely an affirmance of the common-law crime of malicious mischief which had as an element the specific intent to damage property. Malicious destruction of property is not, like the present felony, a purely statutory crime.

Our analysis of the foregoing authority convinces us that specific intent is not required for a conviction under the tampering with railroad property statute. Therefore, the lower court did not err in denying defendant's motion to dismiss or in refusing to give the jury an instruction on specific intent.

Defendant also argues that the tampering with railroad property statute is void for vagueness. We disagree. In *People v Lynch,* 410 Mich 343; 301 NW2d 796 (1981), the Supreme Court noted that a statute is unconstitutionally vague and overbroad if it fails to provide sufficient notice as to what conduct is prohibited. The tampering with railroad property statute by its clear terms prohibits the throwing of a train from a track, the attempt to do so, or the endangering of lives of persons on board the train. The prohibited conduct is clearly set forth in the statute and, thus, the statute is not unconstitutionally vague. Defendant's conviction is affirmed.

Affirmed.