PEOPLE v BEAUDIN

Docket No. 68199. Decided October 24, 1983. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals and remanded the case to the trial court for a new
trial.

Frederick J. Beaudin was convicted by a jury in the Huron
Circuit Court, Allen E. Keyes, J., of endangering lives of
persons traveling on a railroad by tampering with a railroad
track. The Court of Appeals, T. M. Burns, P.J., and D. E.
Holbrook, Jr., and Glaser, JJ., affirmed. The defendant seeks
leave to appeal, alleging that failure of the trial court to
instruct the jury on specific intent was error, requiring rever-
sal.

In an opinion per curiam, signed by Justices Kavanagh,
Levin, Ryan, Brickley, and Cavanagh, the Supreme Court *held:*

The offense of endangering the lives of persons traveling on a
railroad is a specific intent crime, requiring an instruction to
the jury that before convicting a defendant of the offense it
must find that the defendant had a specific criminal intent to
bring about the result prohibited. To be convicted of a specific
intent crime, a defendant must have had a particular criminal
intent beyond the intent to do the physical act. The physical
act of removing bolts from a railroad track, without more, is
insufficient to support a conviction of endangering lives of
persons traveling on a railroad. The defendant must be shown
to have specifically intended to endanger lives. The intent may
be express or may be inferred from the facts and circum-
stances. In this case, the questions of the jurors during deliber-
ation indicate that they could have concluded improperly that
the mere removing of bolts from the track was sufficient to
convict the defendant.

Chief Justice Williams, joined by Justice Boyle, concurring in
part and dissenting in part, agreed that the offense of endan-
gering lives of persons traveling on a railroad is a specific
intent crime, but stated that the instructions of the trial court
were adequate to apprise the jury of the specific intent require-
ment.

Reversed and remanded.

110 Mich App 147; 312 NW2d 187 (1981) reversed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Karl E. Kraus,* Prosecuting Attorney, and *Mary C. Smith,* Assistant Attorney General, for the people.

*John S. Gilbreath, Jr., P.C.,* for the defendant.

PER CURIAM. We are asked to decide whether the trial court erred in refusing to instruct the jury regarding specific intent[1] in the case of a defendant charged with endangering the lives of persons traveling on a railroad.[2] We hold that the instruction should have been given.

---

[1] The specific intent instruction requested by the defendant was CJI 3:1:16:

"When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

"Intent is a decision of the mind to knowingly do an act with a conscious [fully formed] objective of accomplishing a certain [specific] result.

"There can be no crime of _____ under our law where there is no intent to _____, and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent.

"The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence.

*"[At this point read instructions relative to defenses which have been raised which would negate intent, i.e., intoxication, claim of right, etc.]*

"If you find that the defendant, for any reason whatsoever, did not consciously and knowingly act with the intent to _____, the crime cannot have been committed and you must find the defendant not guilty of the crime of _____.

"If from all of the evidence you have a reasonable doubt as to whether or not the defendant knowingly and consciously acted with the intent to _____, then you must find the defendant not guilty of the crime of _____."

[2] MCL 466.12; MSA 22.271.

I

The defendant and another man were accused of endangering lives by removing four bolts from a section of railroad track near Ubly, Michigan, on May 6, 1978. The accomplice was granted immunity and testified against the defendant at a jury trial in the Huron Circuit Court. According to the witness, he came upon a loose bolt and removed it from a rail, handing it to the defendant upon request. The defendant loosened and removed three more bolts. The two men then threw the bolts into a river.

A locomotive engineer with the Chesapeake & Ohio Railway Company testified that he was alerted to a problem with the track four days later when his train lurched sideways. The next day he slowed the train to ten miles per hour as it neared the section, and he spotted a raised rail. Had the train been traveling at its normal speed, a derailment would have been likely, he said.

The defendant testified in his own behalf that he and the accomplice had been walking along the railroad tracks and drinking wine. He contended that it was the accomplice who removed the bolts and threw them into the river.

The defendant was convicted as charged and placed on probation for 36 months. He also was assessed $450 in fines and court costs. The defendant's probation was revoked following a hearing on September 17, 1979, and he received a prison term of 30 to 60 years on the underlying charge of endangering a railroad.[3]

[3] The probation revocation hearing was held in response to a petition charging the defendant with second-degree criminal sexual conduct with an eight-year-old Ubly girl. MCL 750.520c(1)(a); MSA 28.788(3)(1)(a). The judge found that the defendant had committed the offense, which carries a maximum penalty of 15 years in prison. The judge stated that the facts adduced at the hearing would have

The defendant argued on appeal[4] that the offense with which he was charged requires a showing of specific intent and that the trial judge erred in not so instructing the jury. The judge based his decision partly on the fact that, under the statute, no particular person need be the target of the endangering act. The Court of Appeals affirmed the defendant's conviction, agreeing with the trial judge that the offense at issue only requires proof of general intent.[5] 110 Mich App 147; 312 NW2d 187 (1981).

II

This Court recently reaffirmed the validity of the general versus specific intent dichotomy in the context of the availability of an intoxication defense. *People v Langworthy* and its companion case *People v Lundy,* 416 Mich 630; 331 NW2d 171 (1982).[6] The majority opinion reiterated that the

---

supported a conviction of first-degree criminal sexual conduct, a life offense.

[4] The Court of Appeals granted the defendant's application for delayed appeal. He had not appealed following his original sentence of probation, but did so after the probation was revoked and a prison term imposed.

[5] The Court of Appeals cited two early decisions of this Court which address the statute at issue. *People v Dunkel,* 39 Mich 255 (1878), and *People v Petheram,* 64 Mich 252, 268-279; 31 NW 188 (1887) (CAMPBELL, C.J., *dissenting).* The relevant language of the statute has not changed since its enactment in 1873 PA 198. Although neither opinion discusses the nature of the intent necessary for conviction, the Court of Appeals stated that the proper inference is that only a general intent is required.

[6] While recognizing the difficulties with the dichotomy, the majority reaffirmed the unavailability of the voluntary intoxication defense to general intent crimes. Three of the four justices making up the majority concluded that the general intent-specific intent distinction is an unsatisfactory concept, but said that it was up to the Legislature to fashion reform. Justices LEVIN and KAVANAGH, while agreeing that the issue deserves legislative consideration, dissented from the holdings in *Langworthy* and *Lundy* on the basis that second-degree murder and first-degree criminal sexual conduct ought to be considered specific intent crimes.

distinction between specific intent and general intent crimes is that the former involve a particular criminal intent beyond the act done, while the latter involve merely the intent to do the physical act.

We believe that the inescapable conclusion is that the offense considered by us today is a specific intent crime and that jury instructions which do not include that element are deficient.

The statute under which Beaudin was charged, provides in pertinent part:

"If any person shall, by the placing of any impediment upon the track of any railroad, or by any other means whatsoever, throw from said track any engine or cars used thereon, or attempt so to do, whether such engine or cars be thrown from said track or not, or shall by any other means whatsoever willfully endanger or attempt to endanger the lives of persons engaged in the work of said road, or persons traveling on the engine or cars of said road, he shall be subject to imprisonment in the state prison during his natural life, or any number of years, in the discretion of the court. And it shall not be necessary for the people to allege or prove in any such case that the person thereby intended to injure or endanger the life of any particular person or persons." MCL 466.12; MSA 22.271.

Thus, under the statute, the defendant would be guilty if he threw or tried to throw a train from the tracks or willfully endangered or tried to endanger the lives of persons working or traveling on the railroad. The information filed against the defendant charged him under the latter theory, *i.e., willfully* endangering lives.[7]

---

[7] We limit our inquiry to a consideration of the language under which the defendant was charged and offer no opinion as to the nature of the intent necessary under the other theories of the statute.

Performance of the physical act proscribed in the statute is not enough to sustain a conviction. The act must be coincident with an intent to bring about the particular result the statute seeks to prohibit. In order for Beaudin to be guilty of this crime, he must have removed the bolts from the rail with the *specific intent* to endanger lives. Such an intent may be express or it may be inferred from facts and circumstances. We disagree with the trial judge that only a general intent is required by the statute because the statute does not indicate that a particular person need be the target of the endangering act. All this means is that a defendant need not intend to endanger specific persons, but may intend only to injure people in general. However, it is the nature of the intent required to violate the statute which must be examined. For the reasons outlined above, we have concluded that that intent must be a specific one.

There is no question that the jury in this case could have properly concluded from the evidence that Beaudin intentionally removed the bolts and threw them into a river. However, without the guidance of a *specific intent* instruction, the jury also could have improperly concluded that the intentional removal of the bolts was enough to convict the defendant. This potential confusion is not mere speculation. Shortly after the jurors began deliberations, they sent a note to the trial judge concerning the question of intent. The judge responded by rereading the pertinent parts of the statute under which the defendant was charged. The jurors apparently remained confused, however, as illustrated by the following exchange with the trial judge:

"*Juror Adams:* Well, I am still puzzled about the

willful intent. In other words, by removing the bolt, or whatever obstruction, you are thereby willfully intending or do you have to prove otherwise that there is willful intent to harm?

"*The Court:* It is not an easy statute to understand. It doesn't say willful intent, it says 'willfully endanger', it says: 'Whether such engineer or cars be thrown from said track or not, or shall by any other means whatsoever, willfully endanger', so you have to decide if the defendant did willfully endanger or attempt to endanger the lives of persons engaged in the work of the railroad or persons traveling on the engines or cars of the road.

"*Juror Adams:* Does that mean that he premeditatedly thought he was—

"*The Court:* It doesn't say premeditated, it just says 'willfully endanger'.

"*Juror Adams:* In other words, he had to be thinking he was going to endanger somebody by doing it. Was it just—you know—we are just trying to decide was it just a prank with no thought given to the consequences or was there a willful desire to harm somebody.

"*The Court:* I think willfully endanger means that he had to have some thought in his mind, or should have had, as to what consequences would arise from what he did."

The jury returned approximately 45 minutes later with a guilty verdict.

We conclude that the offense of endangering the lives of persons on a railroad is a specific intent crime and that the trial judge erred in not so instructing the jury.

Accordingly, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand the case to the Huron Circuit Court for a new trial at which instructions on specific intent are to be given. We do not retain jurisdiction.

KAVANAGH, LEVIN, RYAN, BRICKLEY, and CAV-
ANAGH, JJ., concurred.

WILLIAMS, C.J. *(concurring in part and dissent-
ing in part).* While I agree with the majority's
conclusion that the offense of endangering the
lives of persons traveling on a railroad is a specific
intent crime, I do not agree that the trial judge's
instructions were inadequate.

The defense attorney requested a specific intent
instruction as set forth in the Michigan Criminal
Jury Instructions. See CJI 3:1:16. This request was
refused. Although this Court has encouraged the
use of CJI, it has not required it. See Supreme
Court Administrative Order No. 1978-5, 402 Mich
lxxxvii; Supreme Court Administrative Order No.
1977-1, 399 Mich lxxii. Hence, while a specific
intent instruction was necessary, it need not have
been CJI 3:1:16. The trial judge did read the
statute to the jury, and at one point the following
colloquy occurred between a juror and the trial
judge:

"*Juror Adams:* Well, I am still puzzled about the
willful intent. In other words, by removing the bolt, or
whatever obstruction, you are thereby willfully intend-
ing or do you have to prove otherwise that there is
willful intent to harm?

"*The Court:* It is not an easy statute to understand. It
doesn't say willful intent, it says 'willfully endanger', it
says: 'Whether such engineer or cars be thrown from
said track or not, or shall by any other means whatso-
ever, willfully endanger', so you have to decide if the
defendant did willfully endanger or attempt to endan-
ger the lives of persons engaged in the work of the
railroad or persons traveling on the engines or cars of
the road.

"*Juror Adams:* Does that mean that he premeditat-
edly thought he was—

"*The Court:* It doesn't say premeditated, it just says 'willfully endanger'.

"*Juror Adams:* In other words, *he had to be thinking he was going to endanger somebody by doing it.* Was it just—you know—we are just trying to decide was it just a prank with no thought given to the consequences or was there a willful desire to harm somebody.

"*The Court:* I think *willfully endanger means that he had to have some thought in his mind, or should have had, as to what consequences would arise from what he did."* (Emphasis added.)

On the basis of the above, the trial judge adequately instructed the jury.

In view of the foregoing, I respectfully dissent from the majority opinion insofar as it holds that the jurors were not adequately instructed on specific intent.

BOYLE, J., concurred with WILLIAMS, C.J.