YOUNG, J.
(concurring in part and dissenting in part). I concur in that portion of the lead opinion that concludes that, where an accused is charged with an offense “consisting of different degrees,” MCL 768.32(1) permits the accused to be found guilty of an inferior offense as that term has been defined in People v Cornell[1] I believe that the statute permits a defendant to be found guilty of a necessarily included lesser offense, but not a cognate lesser offense, of the charged offense.
However, I disagree with the lead opinion’s conclusion that the statute has been violated. Because it is impossible to commit first-degree criminal sexual conduct (CSC I), MCL 750.520b, without first having committed second-degree criminal sexual conduct (CSC II), MCL 750.520c, CSC II is a necessarily included lesser offense of CSC I. Therefore, the trial court was free to find, on the basis of the victim’s testimony as well as defendant’s confession, defendant guilty of second-degree criminal sexual conduct. Moreover, even *144 if an error had occurred in this case, the unpreserved error would be harmless under plain error review. Because the lead opinion concludes otherwise, I dissent. I would reverse the judgment of the Court of Appeals and remand the case for consideration of defendant’s remaining appellate issues.
I. FACTUAL BACKGROUND AND TRIAL COURT DECISION
Because the lead opinion’s description of the facts is so divergent from my own, I provide the following facts, taken from the trial record.
The testimony in this case indicates that on two separate days defendant, the dean of students at a charter high school, led the victim into a dark, deserted stairway at the high school and sexually assaulted her.[2] The victim testified that on the first occasion, defendant penetrated her vagina with his finger and his penis. The victim testified that during the second incident, occurring two days later, defendant both fondled and digitally penetrated her vagina, but was interrupted when another student, the victim’s friend, attempted to open the door to the stairway.[3] This testimony was corroborated by the student, who testified that she opened the door to the stairway and it “shut right back.”[4]
*145 The second stairway incident was also consistent with a statement given by defendant during a police interview in which he described the victim as the aggressor in the sexual encounter. In his statement, defendant told the officer that the victim “had been following him for the last two weeks,” that her following him “bothered him,” and that he went to the dark, off limits stairway area with the victim. Defendant stated that upon arriving in the deserted stairway, the victim pulled her pants down, “grabbed his penis, and attempted to put it inside her vagina.” Defendant further stated that “his hand went between [the victim’s] legs, touching her vagina.” However, defendant indicated that the incident ended when “someone came to the door” and defendant “pushed the door back with his arm.”
In rendering its verdict, the trial court observed that the victim’s testimony regarding being with the defendant in the dark stairway was substantiated by the witness’s testimony, and was “also corroborated by what the defendant admits happened.”[5] Noting that there were some inconsistencies in the victim’s testimony, the trial court ruled that it was basing its verdict on what it could “rely upon” — defendant’s admission that he touched the victim’s vagina. The trial court found defendant guilty of two counts of CSC II,[6] finding *146 that defendant “intentionally touched the groin area or genital area of the complainant, and that this was done for sexual purposes.”[7]
II. CSC II IS A NECESSARILY INCLUDED LESSER OFFENSE OF CSC I
The lead opinion cites People v Lemons[8] for the proposition that CSC II is a cognate lesser offense of CSC I because CSC II contains an additional “element” that is not found in CSC I. However, as explained below, the plain language of MCL 750.520b and 750.520c reveals that both crimes contain only two elements. Rather, what the lead opinion refers to as an additional “element” is actually part of the definition of one of the two elements. Additionally, the lead opinion independently concludes that CSC II is a cognate lesser offense of CSC I because it is possible to commit CSC I without first having committed CSC II. The lead opinion hypothesizes that a defendant who commits CSC I could possess a criminal purpose “that could not reasonably be construed as coming within the intents listed in the *147 CSC II statute.”[9] Ultimately, however, the conclusion that CSC II is a cognate lesser offense of CSC I is premised on a misreading of the relevant statutes.
Both CSC I and CSC II are general intent crimes,[10] each containing two elements.[11] For either crime, a defendant “is guilty of criminal sexual conduct” where the defendant engages in sexual conduct and any of the several delineated “circumstances” exist.[12] The principal difference between these two offenses is the type of evidence necessary to satisfy the sexual conduct element — CSC I requires that the defendant commit “sexual penetration,” while CSC II requires “sexual contact.”
*148 Both of the sexual conduct elements are statutorily defined. “Sexual penetration” is defined at MCL 750.520a(p) as
sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person’s body or of any object into the genital or anal openings of another person’s body, but emission of semen is not required.
“Sexual contact,” on the other hand, is defined at MCL 750.520a(o) as
includ[ing] the intentional touching of the victim’s or actor’s intimate parts or the intentional touching of the clothing covering the immediate area of the victim’s or actor’s intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
(i) Eevenge
(ii) To inflict humiliation
(Hi) Out of anger.
Therefore, under the plain language of the statute, the “sexual contact” element of CSC II is satisfied where there is an intentional touching of either the victim’s or actor’s intimate parts, and that intentional touching “can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner” for revenge, to inflict humiliation, or out of anger. Id. Contrary to the claims of the lead opinion, the definition of “sexual contact” does not add a third element to CSC II; rather, it provides meaning to one of the two elements delineated in MCL 750.520c. This statutory language is clear and includes a “reasonable person” or objective assessment of the purpose behind the sexual contact, thereby *149 limiting criminal liability to only those intentional touchings that may “reasonably be construed” as being sexually motivated.
Thus, defendant’s claimed subjective motivation for committing the sexual touching plays no role under the plain language of the definition of “sexual contact.” Certainly, a defendant is free to argue to the jury that the prosecutor has failed to prove the “sexual contact” element of the offense because an objective assessment of the facts and circumstances indicates that the sexual contact was not done for a sexual purpose. However, there is no basis in the statute from which to conclude that defendant’s subjective motivation precludes a jury from concluding that the element has been proven, and that the sexual touching could be reasonably construed as “being for the purpose of sexual arousal,” “done for a sexual purpose,” or done “in a sexual manner for . .. [r]evenge[,] to inflict humiliation[,]” or “[o]ut of anger.”
As the lead opinion correctly notes, the proper test for determining whether CSC II is a necessarily included lesser offense of CSC I is whether the elements of the lesser offense are completely subsumed in the greater offense, and it is impossible to commit CSC I without having committed CSC II. In order to demonstrate that it is theoretically possible to commit CSC I without having committed CSC II, the lead opinion provides a list of colorful examples of sexual penetration, wherein the defendant claims to have a motivation for the penetration that does not fall within MCL 750.520a(o). In posing these examples, the lead opinion fails to reckon with a critical legal fact: the plain definition of “sexual contact” requires an objective assessment of the purpose behind the sexual conduct. Thus, the defendant’s subjective motivation for the conduct is utterly irrelevant. In each and every one of *150 the examples listed, the “sexual contact” element would be satisfied because a reasonable juror could construe the purpose for the sexual conduct as satisfying MCL 750.520a(o).
Because I believe that the elements of CSC II are completely subsumed in CSC I because it is impossible to commit the greater offense without having committed the lesser offense, CSC II is an “inferior offense” under MCL 768.32(1). Therefore, no statutory violation occurred when the trial court sua sponte found defendant guilty of the necessarily included lesser offense.
III. HARMLESS ERROR
Assuming arguendo that an error occurred in this case, I believe that the error was harmless. As an unpreserved nonconstitutional error, the applicable standard of review is for plain error.[13] Under the plain error rule, defendant must show that an error occurred, that the error was plain, and that the plain error affected a substantial right of the defendant.[14] In order to show that a substantial right was affected, defendant must show that the error affected the outcome of the trial proceedings.[15] Defendant’s failure to establish a plain error affecting a substantial right precludes a reviewing court from acting on such an error.[16] However, even where a defendant establishes that the plain error affected a substantial right, reversal is only warranted “ ‘when the plain, forfeited error resulted in the *151 conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings ...”[17]
The lead opinion contends that defendant, being charged only with CSC I, tendered an “all or nothing” defense regarding whether “defendant had sexually penetrated the complainant.”[18] Thus, defendant’s conviction of CSC II resulted in prejudice. Unfortunately, this assertion is not supported by the trial court record. The defense theory was not predicated on the claim that no penetration had occurred; rather, the defense theory advanced at trial was that no sexual misconduct of any kind occurred.
THE DEFENSE ACTUALLY TENDERED AT TRIAL
The lead opinion states that the error that occurred in this case was not harmless because defendant “may have adopted a different strategy at trial,” including “objecting to the police officer’s testimony regarding his alleged admission of a sexual touching.”[19] The lead opinion further states that, but for the error, defense counsel “may not have withdrawn his motion to suppress the statement or for a Walker[20] hearing just before the trial began.”[21] Similarly, the concurring opinion opines that the error was outcome determinative because of “the critical fact” that “defense counsel had no incentive to challenge the admission of the confession ... .”[22]
*152 All these claims of prejudice, however, are belied by a review of the trial court record, which reveals the actual defense presented at trial. The theory of defense presented at trial was that no sexual conduct of any type occurred between defendant and the victim, that the victim lied about the alleged incidents, and that the victim had motive to lie because one of her classmates attempted to extort money from defendant.[23] The chosen defense of denying all sexual conduct necessarily encompasses denying sexual penetration as well as denying sexual contact. Defense counsel cross-examined prosecution witnesses, focusing on inconsistencies in their testimony in an effort to attack their credibility. The sole defense witness, a math teacher at the school, testified that his attendance records indicated that both witnesses were in his math class at the time of the events, further attacking their credibility. Because the defense presented was a complete denial of the alleged events, it is unclear how the defense trial strategy might have changed had defense counsel known that the trial court was going to find defendant guilty of CSC II on the basis of sexual conduct that defendant admitted committing.
Moreover, the trial court record conclusively establishes that defense counsel in fact challenged the confession by arguing at trial that the inculpatory statement was never made. During closing argument, defense counsel forthrightly argued to the trial court that “[tjhere were no admissions and no statement made by Mr. Nyx.” Therefore, rather than claim that the statement was involuntary or the product of coercion, defense counsel made the strategic decision to *153 claim that it was not given. While the lead opinion claims that the defendant would have sought suppression of the statement in a Walker hearing but for the error, this course of action would unavoidably require acknowledging that an inculpatory statement was given. Such an action would have undermined the actual defense tendered at trial. Thus, I do not share the view of my colleagues that the failure to request a Walker hearing is indicative of anything other than the fact that defendant claimed he made no confession of sexual misconduct.
Furthermore, as a Walker hearing is designed to test the voluntariness of a confession, the lead opinion fails to recognize that pursuing a Walker hearing was the weaker avenue of challenge under the facts of this case. Maurice Nyx, a college educated professional, voluntarily arrived at the police station midday to be interviewed, accompanied by his attorney. He was not in custody during the interview, signed a waiver of rights form before giving the statement, and never asked for his attorney at any point during the interview before admitting to the interviewing officer that he volitionally touched the vagina of his 15-year-old student while in a dark, restricted access stairway at the school. In addition to a complete dearth of coercion or involuntariness, the record reveals no factual basis for the majority’s conclusion that, but for the error, defense counsel would have sought suppression of the confession. Rather, the record reveals no credible basis upon which defendant could have pursued a successful Walker hearing. Moreover, given that defense counsel actually challenged the confession, it cannot be said that counsel “had no incentive” to do so. Certainly, given defendant’s defense theory of complete denial, the existence of defendant’s confession makes his theory of defense less *154 probable, providing defense counsel with more than ample incentive to challenge the existence of the confession.
IV CONCLUSION
I agree that MCL 768.32(1) permits a defendant to be found guilty of a necessarily included lesser offense, but not a cognate lesser offense, of the charged offense. However, I disagree with the lead opinion’s conclusion that a statutory violation has occurred because I believe that CSC II is a necessarily included lesser offense of CSC I. Therefore, the trial court properly found defendant guilty of CSC II, which was amply supported by the victim’s testimony as well as defendant’s confession. Moreover, assuming that an error had occurred in this case, the unpreserved nonconstitutional error would be harmless under the plain error rule.
I would reverse the judgment of the Court of Appeals and remand the case to that Court to address defendant’s remaining appellate issues.
WEAVER, J., concurred with YOUNG, J.

 466 Mich 335; 646 NW2d 127 (2002).

 Testimony provided by a school official indicated that this stairway was off limits to students and was generally chained and padlocked shut. Only four school personnel had keys to the padlock, including defendant. An internal investigation revealed that the light fixture in the stairway was not functional, consistent with the victim’s testimony that the stairway was completely dark.

 The victim testified that defendant immediately pushed the door closed as it started opening.

 The witness testified that she was “worried” and started looking for the victim. The witness went to the stairway area because the victim had told her the location of the previous incident. The witness also testified *145 that she observed defendant flirting with the victim on several occasions before the incidents, including “digging” in the victim’s back pockets and jacket pockets that were “located over her breasts.”

 The trial court subsequently expressed disbelief that any “teacher would allow themselves [sic]” to be in an unlit stairway area “with a child.” However, the trial court noted that “not only the complainant says it happened, her friend says it happened, and even the defendant admits that it happened.”

 By the trial court’s own admission, it convicted defendant of CSC II and impliedly acquitted defendant of CSC I although the court subsequently acknowledged that “[t]he People established CSC I.” The court *146 “hop[ed] that by compromising a verdict,” it would give “the defendant a break” and that he “wouldn’t have to go to prison.” The trial court “was surprised,” however, to find that defendant had two prior felony convictions that negatively affected his minimum sentence range under the sentencing guidelines.

 The trial court also ruled that the victim was 13 to 15 years old at the time and that defendant used his position of authority over the victim.

 454 Mich 234; 562 NW2d 447 (1997). In Lemons, the defendant was charged with CSC I for receiving cunnilingus from her son and stepdaughter, both of whom were under 13 years of age. The defendant sought and was denied a jury instruction on CSC II, the trial judge concluding that oral contact was sufficient to establish cunnilingus. The Lemons Court reversed the Court of Appeals determination that the trial court erred by refusing to instruct the jury on CSC II on two bases. First, the Court concluded that CSC II was a cognate lesser offense because CSC II required proof that the “defendant intended to seek sexual arousal or gratification.” Id. at 253. Second, the Court concluded that cunnilingus “by definition” did “not require penetration.” Id. at 255.

 Ante at 135.

 People v Langworthy, 416 Mich 630, 645 n 26; 331 NW2d 171 (1982). The mens rea requirement of general intent crimes is satisfied by proving that the defendant purposefully or voluntarily performed the wrongful act at issue. People v Beaudin, 417 Mich 570, 573-574; 339 NW2d 461 (1983); Langworthy, supra at 639, 644; People v Nowack, 462 Mich 392, 405; 614 NW2d 78 (2000).

 As a statutory criminal offense, the establishment of elements is a decision for the Legislature. See People v Selwa, 214 Mich App 451, 458; 543 NW2d 321 (1995).

 These delineated “circumstances” are duplicative, and require the existence of one of several aggravating factors in addition to the sexual conduct, including: the victim being less than 13 years old, MCL 750.520b(l)(a), 750.520c(l)(a); the victim’s young age combined with the familial relationship between the defendant and victim, MCL 750.520b(l)(b)(i) or (ii), 750.520c(l)(b)(z) or (ii) or combined with the defendant’s use of an authoritative position over the victim, MCL 750.520b(l)(b)(¿¿¿) or (iv), 750.520c(l)(b)(z¿¿) or (izb; the sexual conduct’s occurring during the commission of a felony, MCL 750.520b(l)(c), 750.520c(l)(c); the defendant’s use of a weapon, MCL 750.520b(l)(e), 750.520c(l)(e); the defendant’s causing personal injury to the victim and using force or coercion to accomplish the sexual act, MCL 750.520b(l)(f), 750.520c(l)(f); or the victim’s mental incapacity or physical helplessness combined with personal injury, a familial relationship, or the defendant’s use of an authoritative position over the victim. MCL 750.520b(l)(g), 750.520b(l)(h)(i), 750.520b(l)(h)(zz), 750.520c(l)(g), 750.520(c)(h)(f), 750.520c(l)(h)(zz).

 People v Grant, 445 Mich 535; 520 NW2d 123 (1994). The same standard of review applies to forfeited constitutional errors. People v Carines, 460 Mich 750; 597 NW2d 130 (1999).

 Grant, supra at 552-553; United States v Olano, 507 US 725, 731-734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

 Id.

 Id.

 People v Pipes, 475 Mich 267, 279; 715 NW2d 290 (2006), quoting Cannes, supra at 763 (internal citations and quotation marks omitted); Olano, supra at 736; Johnson v United States, 520 US 461, 469-470; 117 S Ct 1544; 137 L Ed 2d 718 (1997).

 Ante at 125, 126.

 Ante at 126.

 People v Walker (On Rehearing), 374 Mich 331; 132 NW2d 87 (1965).

 Ante at 126-127.

 Ante at 115-116 n 2.

 Testimony adduced at trial revealed that after the victim told a classmate about the first incident, the classmate attempted to extort $3,000 from defendant.