*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ALBERT MONTEZA SMITH IV,

        Defendant-Appellant.

FOR PUBLICATION
March 11, 2021
9:00 a.m.

No. 349900
Livingston Circuit Court
LC No. 18-025394-FC

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

RICK, J.

Defendant appeals as of right his jury trial convictions of carjacking, MCL 750.529a(1); third-degree fleeing and eluding, MCL 750.479a(1) and MCL 750.479a(3); assaulting, resisting, and obstructing a police officer, causing injury, MCL 750.81d(2); assaulting, resisting, and obstructing a police officer, MCL 750.81d(1); felonious assault, MCL 750.82(1); attempted disarming of a police officer, MCL 750.479b(2); and attempted unlawful driving away of a motor vehicle, MCL 750.413. He was sentenced to serve 12 to 25 years' imprisonment for carjacking, 2 to 5 years' imprisonment for fleeing and eluding, 2 to 4 years' imprisonment for assaulting, resisting, and obstructing a police officer, causing injury, 1 to 2 years' imprisonment for assaulting, resisting, and obstructing a police officer, 2 to 4 years' imprisonment for felonious assault, 3 to 5 years' imprisonment for attempted disarming of a police officer, and 1 year to 30 months' imprisonment for attempted unlawful driving away of a motor vehicle, to be served concurrently, with credit for 156 days served. Defendant challenges his conviction as to the carjacking offense only and argues that the evidence was insufficient to establish that he committed carjacking. We affirm.

## I. PERTINENT FACTS

This case arises out of events that occurred on November 28, 2018, after defendant was involved in a hit-and-run accident, fled from police, and crashed his vehicle.

Sheriff Deputy Michael Mueller responded to a hit-and-run incident, which led to his pursuing defendant's vehicle and finding it upside down, against a pole. Deputy Mueller parked his patrol vehicle, got out of his car, and ran to the driver's side of defendant's vehicle, where he

saw defendant trying to crawl out of his vehicle. Deputy Mueller reached inside and pulled defendant out of the vehicle. After defendant was outside of the vehicle, Deputy Mueller testified, he tried to get defendant's arms behind his back and take him into custody; however, defendant actively resisted. When Deputy Mueller tried to put defendant on the ground he slipped on a piece of debris and fell onto his back. After he fell, defendant hit him, attempted to grab his duty weapon, and then ran toward the patrol vehicle; the vehicle was running at the time and the front driver's side door was open.

Deputy Mueller testified that he deployed his taser at defendant and that defendant hit the driver's side rear door of the patrol vehicle and then climbed into the vehicle. Deputy Mueller testified that defendant sat in the patrol vehicle, with his feet inside the vehicle near the pedals, and had one of his hands on the steering wheel and the other on the gear shifter and defendant attempted to put the vehicle into gear. Deputy Mueller testified that he reached his hand through the steering wheel and grabbed onto the gear shifter so that defendant could not put the vehicle into gear and that defendant pulled down on the gear shifter while he held it in park.

Michigan State Police Trooper Ty Peterson also responded to the incident and, upon his arrival, he saw Deputy Mueller attempting to remove defendant from the driver's seat of the patrol vehicle. Trooper Peterson testified that defendant was sitting upright in the front driver's seat of the patrol vehicle with his right hand on the gear shift and that his feet were by the brake and gas pedals. Eventually, Trooper Peterson turned off the patrol vehicle, removed the keys, and assisted Deputy Mueller in removing defendant from the vehicle; he testified that defendant resisted his efforts to retake the patrol vehicle. At some point, defendant let go of the gear shifter and steering wheel and was pulled out of the vehicle and arrested by the two officers.

A witness observed defendant punching and kicking Deputy Mueller and attempting to take his gun. She testified that defendant attempted to start and take the patrol vehicle and that defendant's hands were on the steering wheel. Another witness testified that Deputy Mueller struggled to remove defendant from the patrol vehicle and that the two officers removed defendant within five to eight seconds.

Defendant did not recall fighting with or hitting Deputy Mueller; however, he testified that he fell on top of him and that he grabbed and pushed down Deputy Mueller's hand and gun. Defendant did not remember being in the driver's seat of the patrol vehicle. He testified that he ran toward the patrol vehicle and fell into it after he was tased. Defendant also did not remember his full body being in the driver's seat; he testified that only his upper body was in the driver's seat side of the vehicle. He testified that he did not have the intent to get into the patrol vehicle, put it in gear, and take it.

On appeal, defendant argues that there was insufficient evidence to prove he had the requisite intent to commit carjacking.

## II. STANDARD OF REVIEW

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). "We review the evidence in the light most favorable to the prosecution and determine whether the jury could have found each element of the

charged crime proved beyond a reasonable doubt." *People v Savage*, 327 Mich App 604, 613; 935 NW2d 69 (2019).

> [A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citations omitted).]

"All conflicts in the evidence must be resolved in favor of the prosecution . . . ." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016). Questions of statutory interpretation are reviewed de novo. *People v Peltola*, 489 Mich 174, 178; 803 NW2d 140 (2011).

## III. ANALYSIS

### A. MENS REA

As an initial matter, the parties dispute whether carjacking is a specific intent or general intent crime. We conclude that carjacking is a specific intent crime.

Our Supreme Court has held that "the distinction between specific intent and general intent crimes is that the former involves a particular criminal intent beyond the act done, while the latter involves merely the intent to do the physical act." *People v Beaudin*, 417 Mich 570, 573-574; 339 NW2d 461 (1983). Prior to the amendment of MCL 750.529a, we held that carjacking was a general-intent crime. See *People v Terry*, 224 Mich App 447, 455; 569 NW2d 641 (1997), and *People v Davenport*, 230 Mich App 577, 581; 583 NW2d 919 (1998). However, MCL 750.529a was amended in 2004 and provides, in pertinent part:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.
>
> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle. [MCL 750.529a as amended by 2004 PA 128.]

The prior version of the statute provided:

> A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in [MCL 750.412]

from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or any term of years. [MCL 750.529a as added by 1994 PA 191.]

Regarding statutory interpretation, our Michigan Supreme Court has held:

Our overriding goal for interpreting a statute is to determine and give effect to the Legislature's intent. The most reliable indicator of the Legislature's intent is the words in the statute. We interpret those words in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole. Moreover, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. If the statutory language is unambiguous, no further judicial construction is required or permitted because we presume the Legislature intended the meaning that it plainly expressed. [*Peltola*, 489 Mich at 181 (quotation marks and citations omitted).]

Additionally, "a change in the language of a prior statute presumably connotes a change in meaning[.]" *People v Arnold*, 502 Mich 438, 479; 918 NW2d 164 (2018).

In *People v Langworthy*, 416 Mich 630; 331 NW2d 171 (1982), our Supreme Court considered several factors in determining whether first-degree criminal sexual conduct was a specific-intent or general-intent offense, including whether the language of the statute or the definitions of the corresponding terms contained language regarding intent. *Id*. at 643. Our Supreme Court specifically noted:

The fact that the Legislature must have been cognizant, in enacting the first-degree criminal sexual conduct provision, of the established rule that rape does not require specific intent, combined with the absence of any provision regarding intent, considerably weakens defendant's argument that his crime is a specific-intent offense. If the Legislature wanted to add specific intent as an element, knowing that the predecessor statute had been consistently construed as a general-intent crime, it would have specifically done so. The fact that it did not leads us to conclude that the Legislature intended to maintain the general rule that "no intent is requisite other than that evidenced by the doing of the acts constituting the offense", i.e., general intent. [*Id*. at 643-644 (citations omitted).]

Applying those same considerations here, the amended statutory language supports our conclusion that carjacking is a specific-intent offense because the prior statute was construed as a general-intent offense and the Legislature specifically amended MCL 750.529a to include "in the course of committing a larceny of a motor vehicle" as an element of the offense. "There is no statutory definition of larceny in Michigan and all statutes use the term in its common-law sense." *People v March*, 499 Mich 389, 399-400; 886 NW2d 396 (2016) (quotation marks and citation omitted). Our Supreme Court has recognized the following elements of common-law larceny: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *Id*. at 401. We have also held that larceny is a specific intent crime

-4-

requiring the prosecutor to prove that the defendant had the intent to steal or permanently deprive the owner of his or her property. *People v Cain*, 238 Mich App 95, 119, 120; 605 NW2d 28 (1999).

*People v Williams*, 491 Mich 164; 814 NW2d 270 (2012), also provides a helpful analogy. In *Williams*, our Supreme Court interpreted MCL 750.530, which defined robbery as:

> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property. [*Id*. at 171 (quotation marks and emphasis omitted).]

Our Supreme Court held that the plain meaning of the phrase "in an attempt to commit the larceny" applied to "situations in which a criminal defendant makes 'an effort' or undertakes an 'overt act' *with an intent to deprive another person of his property*, but does not achieve the deprivation of property." *Id*. at 174 (emphasis added). Similarly, the unambiguous language of MCL 750.529a requires that the prosecution prove that defendant was "in the course of committing a larceny of a motor vehicle," which includes "acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle[.]" MCL 750.529a(2). Our Supreme Court has held that "[a]n attempt consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993) (quotation marks and citation omitted). Therefore, to convict a defendant of carjacking, the prosecution must establish that the defendant's acts occurred during an attempt to commit, during the commission of, or after the commission of a larceny of a motor vehicle requiring the prosecutor to prove that the defendant had the intent to steal or permanently deprive a person of the motor vehicle.

In conclusion, we hold that carjacking, under the amended statute, is a specific-intent crime requiring the prosecutor to prove beyond a reasonable doubt that defendant had the intent to steal or permanently deprive Deputy Mueller of the motor vehicle.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence of defendant's intent to permanently deprive Deputy Mueller of his vehicle. We disagree.

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *Oros*, 502 Mich at 239 n 3. As indicated, the prosecutor was required to prove that defendant committed or *attempted to commit* larceny of the vehicle as an element of the offense and the specific intent necessary to commit larceny is the intent to steal or permanently deprive a

person of his or her property. *Cain*, 238 Mich App at 119, 120. "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). "[Q]uestions of intent and the honesty of belief inherently involve weighing the evidence and assessing the credibility of witnesses, which is a task for the jury." *Cain*, 238 Mich App at 119.

Considering the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of carjacking, including the requisite intent, had been proven beyond a reasonable doubt.

Deputy Mueller testified that, after he slipped on debris and fell, defendant hit him and attempted to take his gun and then ran toward the patrol vehicle. Deputy Mueller testified that defendant climbed into the front driver's side of the patrol vehicle after he was tased. Deputy Mueller and Trooper Peterson both testified that defendant was seated in the patrol vehicle, that he had one hand on the steering wheel and the other on the gear shifter, that defendant's feet were inside the vehicle near the pedals. Deputy Mueller testified that defendant tried to put the vehicle into gear and that defendant pulled down on the gear shifter while he held it in "park." Trooper Peterson testified that he shut off the patrol vehicle, removed the keys from the ignition, and assisted Deputy Mueller in removing defendant from the vehicle. Trooper Peterson testified that defendant physically resisted his efforts to retake the patrol vehicle.

A female witness observed defendant punching and kicking Deputy Mueller and attempting to take his gun. This witness further testified that defendant attempted to take the patrol vehicle. She testified that defendant's hands were on the steering wheel *and that he tried to start the vehicle*. A different witness testified that Deputy Mueller struggled to remove defendant from the patrol vehicle and that the two officers removed defendant within five to eight seconds.

Although defendant testified that he did not remember being in the driver's seat of the patrol vehicle or reaching for the gear shift and did not intend to put the patrol vehicle into gear and take the vehicle, this Court is "*required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Oros*, 502 Mich at 239 (quotation marks and citation omitted). "It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.* (quotation marks and citation omitted).

Based on the record, a rational trier of fact could have reasonably inferred and found that defendant had the intent to steal or permanently deprive Deputy Mueller of the patrol vehicle. A rational trier of fact could have reasonably concluded that defendant's acts constituted an attempted larceny. The jury could have reasonably determined that defendant used force during the commission of an attempted larceny of the vehicle when he hit Deputy Mueller and then ran toward the patrol vehicle and attempted to engage the gearshift. A rational trier of fact could have reasonably concluded that defendant manifested the requisite specific intention to drive off in the patrol vehicle given he attempted to put the vehicle in gear. A rational trier of fact could also have reasonably concluded that, but for the actions of Deputy Mueller and Trooper Peterson, defendant would have successfully put the patrol vehicle in drive and used it to flee the scene. Further, although defendant claimed he suffered from post-traumatic stress disorder (PTSD), a rational jury

could have rejected that claim and reasonably concluded that defendant deliberately assaulted the officers and resisted their efforts to remove him from the driver's seat of the patrol vehicle. The evidence is sufficient to support the jury's verdict of guilty on the charge of carjacking.

Affirmed.

/s/ Michelle M. Rick
/s/ Brock A. Swartzle