PEOPLE v CURRY

Docket No. 100734. Submitted June 21, 1988, at Grand Rapids.
Decided February 21, 1989.

Richard A. Curry, Jr., was convicted following a jury trial in the
Kent Circuit Court of second-degree murder, assault with in-
tent to commit murder, and two counts of possession of a
firearm during the commission of a felony. Following his con-
viction before the same jury on the supplemental charge of
being a third-offense habitual offender, defendant was sen-
tenced by the trial court, Stuart Hoffius, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in denying
defendant's motion to impanel a new jury for his trial on the
supplemental charge. The trial court's failure to give a caution-
ary instruction that the jury should disregard anything heard
in the previous trial was not error requiring reversal.

2. The trial court did not err in failing to give CJI 3:1:16, the
separate specific intent instruction, in addition to the first-
degree murder instruction. CJI 3:1:16 need not be given where,
as in this case, intent is not a disputed issue in the case.

3. In every case charging first-degree murder, the jury must
be instructed on the necessarily included offense of second-
degree murder. CJI 16:3:02 should be used for this purpose.

4. Since the evidence was not clear and uncontested that
defendant was a nondeadly aggressor assaulted with deadly
force and defendant did not object or request CJI 7:9:05, the
trial court did not err in failing to give CJI 7:9:05 or a qualified
self-defense jury instruction. Defendant's rights were ade-
quately protected when the court gave CJI 7:9:01. Such instruc-
tion also adequately informed the jury of the law regarding
self-defense against persons acting in concert.

5. The instructions, taken as a whole, adequately informed

REFERENCES

Am Jur 2d, Appeal and Error §§ 798, 895, 896; Evidence §§ 785 *et
seq.*; Trial §§ 604 *et seq.*, 876 *et seq.*, 906-908.

See the Index to Annotations under Appeal and Error; Homicide;
Instructions to Jury; Pictures and Photographs; Prosecuting At-
torneys.

the jury that, in regard to the charge of assault with intent to commit murder, certain mitigating circumstances could make a killing not the crime of murder but the lesser crime of manslaughter.

6. The general instruction on self-defense was adequate. CJI 7:9:10 would have been inappropriate since there was no evidence presented to support such instruction.

7. The jury was properly instructed; therefore, defendant was not denied the effective assistance of counsel by counsel's failure to object to the instructions as given or to request additional instructions.

8. Defendant was not denied a fair trial by alleged prosecutorial misconduct.

9. The trial court did not abuse its discretion in the admission into evidence of certain photographs at trial.

Affirmed.

1. CRIMINAL LAW — HABITUAL OFFENDERS — JURY TRIAL — NEW JURY.

It is within the sound discretion of a trial court to impanel a new jury to hear habitual offender charges after balancing the cost and inconvenience against the possibility of prejudice to the defendant.

2. CRIMINAL LAW — JURY INSTRUCTIONS — APPEAL.

Appellate review of alleged erroneous jury instructions is waived absent manifest injustice where there was no objection to the instructions given or request for specific instructions; manifest injustice results, and an error is not waived, where the trial court improperly instructed the jury on the law of the case; there is no error in somewhat imperfect instructions if the instructions as given fairly presented to the jury the issues to be tried and sufficiently protected the rights of the defendant.

3. CRIMINAL LAW — JURY INSTRUCTIONS.

Jury instructions must include all elements of the crime charged and must not exclude from jury consideration material issues, defenses and theories if there is evidence to support them.

4. HOMICIDE — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER — JURY INSTRUCTIONS.

The jury must be instructed, sua sponte, on the necessarily included offense of second-degree murder in every case charging first-degree murder; CJI 16:3:02 should be used for such purpose (CJI 16:3:02).

5. CRIMINAL LAW — ASSISTANCE OF COUNSEL — BURDEN OF PROOF.
  Trial counsel is presumed to have provided effective assistance and the defendant bears the burden of overcoming this presumption.

6. CRIMINAL LAW — APPEAL — PROSECUTORIAL MISCONDUCT.
  The test whether prosecutorial misconduct requires reversal is whether the defendant was denied a fair and impartial trial.

7. TRIAL — EVIDENCE — APPEAL.
  The decision whether to admit certain evidence rests within the sound discretion of the trial court and that decision will not be disturbed on appeal unless it was clearly erroneous or constituted an abuse of discretion; a conviction will not be set aside on the ground of improper admission of evidence unless it affirmatively appears that the error resulted in a miscarriage of justice.

8. EVIDENCE — PHOTOGRAPHS — FOUNDATION FOR ADMISSION.
  Photographs are admissible in evidence if they are pertinent, relevant, competent and material on any issue in the case; a proper foundation for the admission of a photograph is made where there is testimony of an individual who is familiar with the scene photographed that it accurately reflects the scene photographed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Carol K. Bucher,* Assistant Prosecuting Attorney, for the people.

Richard A. Curry, Jr., in propria persona, and *James R. Rinck,* for defendant on appeal.

Before: MACKENZIE, P.J., and BEASLEY and M. G. HARRISON,* JJ.

M. G. HARRISON, J. Defendant appeals as of right from his conviction by jury trial of second-degree murder, MCL 750.317; MSA 28.549, assault with intent to commit murder, MCL 750.83; MSA

---

* Circuit judge, sitting on the Court of Appeals by assignment.

28.278, and two counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced, following his conviction as a third-offense habitual offender, to life imprisonment on the second-degree murder conviction, forty to sixty years imprisonment for the assault conviction, and two years imprisonment on each of the felony-firearm convictions. The sentences on the murder and assault convictions were to run consecutively to the sentence on the felony-firearm convictions. We affirm.

Defendant's convictions stemmed from an incident on the morning of November 15, 1986. Defendant had gone to visit Barbara Perry, who was the mother of his son. Perry had been seeing another man while defendant was in prison, but defendant testified that their relationship was still a romantic one. However, when defendant arrived at Perry's house at approximately 5:00 A.M., he saw Anthony Hughes coming out of the house. Hughes got into the passenger side of a Cadillac Seville driven by his brother, David Hughes, and drove away. Defendant testified that he decided to confront Anthony Hughes, so he followed the Seville.

Defendant flashed his headlights, and the Seville pulled over. Anthony Hughes got out and stood by the passenger side of the car. Defendant parked behind the Seville and approached him. An argument ensued and defendant slapped Hughes, in response to which Hughes reached into his pocket and pulled out something that defendant thought was a gun. Defendant then pulled a pistol out of his pocket. Hughes came at defendant, so defendant jabbed him in the face with the gun and told Hughes to "get off him." Hughes continued to swing at defendant with what defendant thought was a gun. Defendant testified that at some point during the swinging altercation he realized that

what Hughes had was a knife and not a gun. Nevertheless, defendant thought that Hughes was trying to kill him and therefore he "just started shooting." Defendant did not know how many times he fired the gun.

During the course of the altercation, defendant saw David Hughes get out of the car and approach from behind, fumbling under his jacket. Defendant turned and shot at David, who was hit and then fled the scene on foot.

Defendant was arrested two days later after a shoot-out with police in which one police officer was killed (see Court of Appeals Docket No. 100735).

At trial, several photographs in which police officers and David Hughes attempted to recreate the positions of defendant and the Hughes brothers during the incident were admitted into evidence. David Hughes stated that these were an accurate depiction of the scene on the morning of the incident, but defendant claimed that they were inaccurate. The prosecution also showed twelve slides of an autopsy performed on Anthony Hughes.

The trial judge instructed the jury without objection from defense counsel, and the jury returned guilty verdicts on all four counts. The same jury was used to try defendant on the supplemental charge of being a third-offense habitual offender, MCL 769.11; MSA 28.1083. Defendant was found guilty of the supplemental charge.

I

Defendant raises four issues on appeal. First he argues that the trial court abused its discretion by refusing his request to impanel a new jury for the supplemental trial. Defendant asserts that the jury

was prejudiced by the fact that defendant admitted to prior convictions at the first trial.

There is no absolute right to the impaneling of a new jury to hear habitual offender charges. *People v Potter,* 115 Mich App 125, 139-140; 320 NW2d 313 (1982), lv den 417 Mich 897 (1983). It is within the sound discretion of the trial court to impanel a new jury after balancing the cost and inconvenience against the possibility of prejudice to defendant. *People v Schram,* 98 Mich App 292, 300-302; 296 NW2d 840 (1980).

We find that the trial judge did not abuse his discretion by denying defendant's motion to impanel a new jury for the supplemental trial. As we stated in *Potter, supra,* it would have been advisable for the trial court to give a cautionary instruction to the jury that it should disregard anything heard in the previous trial. However, given the overwhelming evidence of defendant's guilt of the supplemental charge, we cannot say that the trial judge's failure to give such an instruction was error requiring reversal.

II

Defendant next argues that the trial court improperly instructed the jury. Specifically, he asserts that the trial court erred by failing to give, sua sponte, the following instructions: (1) the specific intent instruction for first-degree murder; (2) the complete second-degree murder instruction; (3) the mitigating circumstances or "qualified" self-defense instruction on the manslaughter/assault with intent to commit murder issue; (4) the non-deadly aggressor assaulted with deadly force instruction; (5) the past violence of complainant or decedent instruction; and (6) the self-defense against persons acting in concert instruction.

Since defendant did not object to the instructions or request that any specific instructions be given, appellate review of this issue is waived absent manifest injustice. *People v Trammell,* 70 Mich App 351, 355; 247 NW2d 311 (1976). Manifest injustice results, and an error is not waived, where the trial court improperly instructed the jury on the law of the case. *People v Kohler,* 113 Mich App 594, 599; 318 NW2d 481 (1981). However, there is no error in somewhat imperfect instructions if the instructions as given fairly present to the jury the issues to be tried and sufficiently protect the rights of the defendant. *People v Bender,* 124 Mich App 571, 574-575; 335 NW2d 85 (1983). The instructions to the jury must include all elements of the crime charged and must not exclude from jury consideration material issues, defenses and theories if there is evidence to support them. *People v Reed,* 393 Mich 342, 349-350; 224 NW2d 867 (1975), cert den 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975).

On review of the record, we find that the trial court properly instructed the jury on the law of the case and fairly presented to the jury the issues to be tried. The jury was instructed on the charges of first-degree murder and its lesser-included offenses and assault with intent to commit murder and its lesser-included offenses. The jury was also instructed on self-defense, which was defendant's asserted defense at trial. The instructions which defendant, for the first time on appeal, now contends should have been read were either unnecessary or inappropriate.

Defendant first contends that the trial court should have given CJI 3:1:16, the separate specific intent instruction, in addition to the first-degree murder instruction. CJI 3:1:16 should be given if intent is a disputed issue in the case or if the jury

appears to be confused. *People v Beaudin,* 417 Mich 570, 575-576; 339 NW2d 461 (1983); *People v Yarborough,* 131 Mich App 579, 582; 345 NW2d 650 (1983). Intent was not an issue in the instant case; defendant admitted shooting the Hughes brothers but claimed that it was in self-defense. Further, the jury found defendant guilty of second-degree murder, which is not a specific intent crime. See *People v Langworthy,* 416 Mich 630, 653; 331 NW2d 171 (1982). The failure to give the separate instruction on specific intent was therefore harmless beyond a reasonable doubt.

Defendant's next contention is also without merit. He argues that the trial court erred by giving CJI 16:3:02 rather than CJI 16:3:01, the complete second-degree murder instruction. In every case of first-degree murder, the jury must be instructed, sua sponte, on the necessarily included offense of second-degree murder. *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975). The Use Notes for CJI 16:2:01 state that CJI 16:3:02 should be used for this purpose. The trial court properly informed the jury of the issues to be tried by using CJI 16:2:01 and CJI 16:3:02.

Defendant asserts that the jury should have been instructed on the rights of a nondeadly aggressor assaulted with deadly force, CJI 7:9:05. Defendant also assigns error to the trial court's failure to instruct, sua sponte, on the law of "imperfect" or "qualified" self-defense. This defense focuses on whether defendant would have been entitled to claim self-defense but for his actions as initial aggressor, and mitigates murder to manslaughter. *People v Springer,* 100 Mich App 418, 421; 298 NW2d 750 (1980); *People v Vicuna,* 141 Mich App 486, 493; 367 NW2d 887 (1985).

We do not find that the failure to give these instructions resulted in manifest injustice. Jury

instructions must include defendant's theory of the case if there is evidence to support it. *People v Hoskins,* 403 Mich 95, 100; 267 NW2d 417 (1978). Where evidence of an element of self-defense is clear and uncontested, it is error to fail to instruct on that element even in the absence of a request. *People v Terrell,* 106 Mich App 319, 321; 308 NW2d 183 (1981).

Defendant raised the issue of self-defense, and the trial court gave CJI 7:9:01 and CJI 7:9:04 on self-defense. The evidence that defendant was a nondeadly aggressor was contested at trial. Defendant testified that he slapped Anthony Hughes and that he did not draw his gun until Hughes had pulled a knife. This testimony was contradicted by that of David Hughes, who stated that he had never seen his brother with the knife that was found at the scene. Further, neighbors reported hearing an argument, five to six gunshots, and a voice state, "that is what you get, nigger," which suggests that defendant was the aggressor and not acting in self-defense. Since the evidence of these elements of self-defense was not clear and uncontested, we decline to assign error to the trial court in the absence of an objection or request for CJI 7:9:05 or a qualified self-defense instruction. Defendant's rights were adequately protected by the general self-defense instruction found in CJI 7:9:01. We also find that the general instruction given by the trial court on self-defense adequately informed the jury of the law regarding self-defense against persons acting in concert. Therefore, defendant's claim that the trial court erred by failing to give CJI 7:9:11 is without merit.

Defendant also argues that error requiring reversal occurred by the trial judge's failure to give, sua sponte, CJI 17:2:02 on mitigating circumstances. Defendant asserts that this instruction

was vital because, if the jury found that due to mitigating factors the crime would have been manslaughter if David Hughes died, it would have to acquit on the charge of assault with intent to commit murder. See *People v Mortimer,* 48 Mich 37; 11 NW 776 (1882). The jury was instructed that a killing is not murder if it occurs under mitigating circumstances which make the killing the lesser crime of manslaughter. Instruction was then given distinguishing murder from manslaughter which included all but the first sentence and last paragraph of CJI 17:2:02. Taking the instructions as a whole, we find that the jury was adequately informed on this issue.

Defendant additionally contends that CJI 7:9:10 on past violence of complainant or decedent should have been given by the trial judge sua sponte. In the instruction given by the court with regard to self-defense, the jury was instructed that it should consider "the nature of the threat of the other party, and previous acts of brutality or threats of the other party of which the defendant was aware." We find that the jury was adequately informed on this issue by the general instruction on self-defense. Moreover, since no evidence was produced at trial concerning the Hughes brothers' past violence, CJI 7:9:10 would have been inappropriate.

Alternatively, defendant argues that he was denied effective assistance of counsel by trial counsel's failure to object to the instructions as given, or to request the instructions cited on appeal.

As stated by this Court in *People v Dalessandro,* 165 Mich App 569, 574-575; 419 NW2d 609 (1988), the test to be applied to all claims of ineffective assistance of counsel is that set forth in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Under the *Strickland* test, defen-

dant must first show that counsel's performance was so deficient that it did not qualify as the counsel guaranteed under the Sixth Amendment. Second, defendant must show that counsel's performance was prejudicial to the extent that it denied defendant a fair trial with a reliable result. *Strickland, supra,* 466 US 687.

Trial counsel is presumed to have provided effective assistance, and defendant bears the burden of overcoming this presumption. *People v Carr,* 141 Mich App 442; 367 NW2d 407 (1985). Defendant has failed to show how his trial counsel's performance deprived him of a fair trial.

As we noted above, the instructions as given adequately and fairly presented to the jury the issues to be tried and sufficiently protected the rights of defendant. Therefore, failure to object to the instructions as given or to request additional instructions did not deny defendant a fair trial with a reliable result. Accordingly, we find that he was not denied effective assistance of counsel.

III

For his third issue, defendant argues that he was denied a fair trial by prosecutorial misconduct. The test whether prosecutorial misconduct requires reversal is whether defendant was denied a fair and impartial trial. *People v Jancar,* 140 Mich App 222, 229; 363 NW2d 455 (1985). Defendant cites several instances of misconduct, none of which require reversal.

First, defendant claims it was prosecutorial misconduct to elicit testimony and evidence concerning the house where defendant was arrested, including a photograph of the house. We note that this evidence was within the limits set by the trial court's ruling on defendant's motion in limine to

exclude evidence of the circumstances surrounding defendant's arrest. It was certainly not misconduct on the part of the prosecutor to introduce evidence expressly permitted by the trial judge.

Defendant next takes issue with the prosecutor's questioning of defendant's brother, Robert Curry. The prosecutor asked the witness whether defendant had told him that he quit firing at the Hughes brothers only because he had run out of bullets. The question was objected to and struck, and the witness was instructed not to answer. Additionally, the jury was later instructed that the questions asked of witnesses by attorneys are not evidence. These curative actions were sufficient to overcome any prejudice which would have resulted.

In final argument, the prosecutor made a remark about an ordinary-person standard as it pertains to mitigating circumstances. He also commented on defendant's lack of remorse. Defendant objected to both of these remarks, and both objections were sustained. The trial court instructed the jury to disregard the prosecutor's comment about remorse. Defendant now claims that these comments were improper and denied defendant his right to a fair trial.

The prosecutor may comment on the evidence and draw reasonable inferences therefrom. *Jancar, supra* at 233. In the instant case, in saying that defendant showed no remorse, the prosecutor was commenting on the evidence but left it up to the jury to make any inferences. Moreover, we do not believe that the prosecutor's cryptic remark about the ordinary-person standard unfairly prejudiced defendant. The objection was sustained, the jury instructed to disregard the comment, and the final instructions given to the jury informed them that the arguments of the attorneys were not evidence

and that they should disregard anything said by an attorney which was not supported by the evidence. Defendant was not denied a fair trial by this portion of the prosecutor's argument.

The prosecution also argued to the jury that, if the shots had been a little more to the right, a verdict of first- or second-degree murder would also have been appropriate on Count II. No objection was made, but defendant now claims that it was prosecutorial misconduct to so argue and that the statement denied him his right to a fair trial. We fail to see how these comments prejudiced defendant to the extent that he was denied a fair trial. The remarks were fair comment on the testimony of David Hughes' treating physician. Further, the seriousness of David Hughes' injury was relevant to the issue of intent. We find no error in these comments.

Defendant further contends that the prosecutor made an impermissible "civic duty" argument when he spoke of the two and one-half days of testimony and the hours police spent on the case. No objection was made. In some cases, a prosecutor's appeal to the civic duty or social fears of the jurors has been held to be error warranting reversal. *People v Lasenby,* 107 Mich App 462, 468; 309 NW2d 572 (1981). However, our Supreme Court has held that even civic duty arguments can be cured by cautionary instructions. For example, the instruction that "arguments of counsel are not evidence," is sufficient to cure error. *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976). The comments by the prosecutor may have been an appeal to civic duty, but an instruction similar to that found sufficient in *Hall, supra,* was given. Nor were the prosecutor's comments emotional in nature. Therefore, any error which may have occurred was harmless.

Defendant also claims that the prosecutor argued facts not in evidence but does not specify these facts or indicate how these unobjected-to comments by the prosecutor deprived defendant of a fair trial. In light of defendant's cursory treatment of the issue on appeal, we cannot find error requiring reversal.

IV

For his final issue, defendant argues that the trial court abused its discretion by admitting photographs taken at the autopsy of Anthony Hughes and photographs which supposedly "recreated" the scene of the crime.

A decision whether to admit certain evidence rests within the sound discretion of the trial court, and that decision will not be disturbed on appeal unless it was clearly erroneous or unless it constituted an abuse of discretion. *People v Golochowicz,* 413 Mich 298, 322; 319 NW2d 518 (1982). This Court will not set aside a conviction on the ground of improper admission of evidence unless it affirmatively appears that the error complained of resulted in a miscarriage of justice. MCL 769.26; MSA 28.1096.

Photographs are admissible if they are pertinent, relevant, competent and material on any issue in the case. *People v Eddington,* 387 Mich 551, 562; 198 NW2d 297 (1972). The photographs of the autopsy showed the location and nature of Anthony Hughes' wounds and complemented the testimony of the physician who performed the autopsy. Given that defendant asserted self-defense, these photographs showing three bullet wounds in the back of Anthony Hughes' head were relevant and admissible to refute that defense. See *People v McCord,* 167 Mich App 365, 369-370; 421 NW2d 692 (1988).

Defendant also argues that the trial court abused its discretion by admitting the reconstruction photographs because there were inaccuracies in the photographs. For the admission of a photograph, the only foundational requirement is the testimony of an individual, familiar with the scene photographed, that it accurately reflects the scene photographed. *People v Lobaito,* 133 Mich App 547, 560; 351 NW2d 233 (1984). While defendant testified that the photographs were inaccurate, David Hughes testified that the photographs were an accurate depiction of the scene and of what occurred the morning of the incident. The trial judge also gave a curative instruction to the jury that the photographs were a reenactment of the witness' best recollections of the incident. The claimed error goes to the weight not the admissibility of the photographs. We find no abuse of discretion by the trial court in admitting these photographs.

Defendant's convictions are affirmed.