# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

FAKHER HAYDAR AL-YASIRY,

      Defendant-Appellant.

UNPUBLISHED
August 25, 2016

No. 326677
Wayne Circuit Court
LC No. 14-004743-FC

Before: K. F. KELLY, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to do great bodily harm less than murder,[1] MCL 750.84, first-degree home invasion, MCL 750.110a(2), felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of 11 years and 8 months to 20 years for the home invasion conviction, 1 to 10 years for the assault with intent to do great bodily harm conviction, and 1 to 4 years for the felonious assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

Defendant's convictions arise from an incident on March 9, 2014, at the home of the victim, Ali Alabaudi, in Detroit. Alabaudi was renting the house from the owner, Abbis Aldhalimi. Earlier that evening, Aldhalimi came to the house and became involved in a verbal confrontation with Alabaudi, during which Alabaudi asked Aldhalimi to fix the house, and Aldhalimi expressed to Alabaudi that he wanted Alabaudi to leave the house. Before leaving, Aldhalimi told Alabaudi to "watch and see what's gonna happen today." After Aldhalimi left, defendant and three other persons arrived at the house. Alabaudi recognized his friend Hussein as part of the group, so Alabaudi opened his front door. Thereafter, defendant entered the home along with Hussein, a Hispanic male, and a Hispanic female. The three men were armed with guns. Defendant told Alabaudi to leave the home and made other threats against Alabaudi.

---

[1] Defendant was charged with assault with intent to commit murder, MCL 750.83. The jury convicted him of the lesser offense of assault with intent to do great bodily harm less than murder.

-1-

When Alabaudi reached for defendant's gun hand, the gun discharged and several shots were fired inside the house. After the shooting stopped, defendant and the Hispanic couple left with Hussein. Additional shots were fired at the house from the outside. Alabaudi told the police after the offense, and similarly testified at trial, that defendant was wearing a bulletproof vest during the offense.

## I. EVIDENTIARY RULINGS

Defendant first argues that the trial court erred by admitting into evidence (1) a photograph obtained from defendant's Facebook page, which showed defendant pointing a gun while wearing a bulletproof vest, and (2) a bulletproof vest that the police had recovered from defendant in connection with another case. The decision whether to admit evidence is within the sound discretion of the trial court, and that decision may be reversed only if there is an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id.* at 722-723. Any preliminary questions of law are reviewed de novo. *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

Although defendant argues that the admission of the challenged evidence violated his constitutional rights, an error in the admission of evidence is generally regarded as nonconstitutional unless a specific constitutional guarantee or right is implicated. *People v Whitaker*, 465 Mich 422, 426; 635 NW2d 687 (2001); *People v Herndon*, 246 Mich App 371, 402 n 71; 633 NW2d 376 (2001). Defendant's arguments rely only on state evidentiary rules, MRE 401 (defining relevant evidence), MRE 402 (evidence that is not relevant is not admissible), and MRE 403 (relevant evidence may be excluded if it is unfairly prejudicial). Defendant does not argue that these rules are unconstitutionally arbitrary or disproportionate to the purposes they serve, see *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012), or otherwise explain how admission of the challenged evidence violated a specific constitutional right. Therefore, any error would qualify as nonconstitutional.

## A. FACEBOOK PHOTOGRAPH

Defendant argues that a proper foundation for admitting the Facebook photograph was not established because the officer-in-charge did not know when the photo was taken, did not know who actually provided the photo to him, and was not sure if the photo depicted defendant wearing the same bulletproof vest that was worn during the offense.

"A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person." *In re Robinson*, 180 Mich App 454, 460; 447 NW2d 765 (1989). In this case, the prosecution offered the photo for the purpose of showing that it depicted defendant wearing a bulletproof vest. Alabaudi established a foundation for admitting the photo when he testified that he recognized defendant and the bulletproof vest he was wearing in the photo. The officer-in-charge also recognized defendant in the photo. The officer-in-charge also testified that he was aware that the photograph came from defendant's Facebook page, but it was not necessary to show who took the photo or where it actually came from to establish a foundation for its admission. Rather, the testimony identifying

the person depicted in the photo as defendant was sufficient to establish a foundation for its admission. *In re Robinson*, 180 Mich App at 460. While defendant asserts that the date the photograph was taken was not disclosed, and it was never firmly established that the bulletproof vest depicted in the photo was the same one worn during the offense, those matters impact only the weight of the evidence, not its admissibility. See *People v Curry*, 175 Mich App 33, 47; 437 NW2d 310 (1989).

Defendant's primary argument is that the photograph should have been excluded because it was not relevant and was unfairly prejudicial. We disagree. MRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under MRE 402, relevant evidence is generally admissible, whereas irrelevant evidence is not. The prosecution has the initial burden of establishing the relevance of proposed evidence. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Id*. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v Sabin (After Remand)*, 463 Mich 43, 58; 614 NW2d 888 (2000). Unfair prejudice does not mean any prejudice, but refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994).

The prosecution conceded that it was not offering the photograph to show that defendant had access to a gun. Testimony regarding defendant's concealed weapons permit and his filing of a police report regarding the theft of his weapon established that he had access to a gun. Instead, the photograph was offered, initially, to show that Alabaudi recognized the bulletproof vest in the photo as the same vest worn during the offense. However, after Alabaudi testified that he was unable to identify the vest in the photo as the same one worn during the offense, the prosecutor argued that the photo was still relevant to show that defendant had access to, or was known to wear, bulletproof vests. The evidence was relevant for this purpose because Alabaudi told the police after the offense, and similarly testified at trial, that his assailant, whom he identified as defendant, was wearing a bulletproof vest during the offense. The photograph was probative of the credibility of Alabaudi's description of defendant, as well as defendant's identity as Alabaudi's assailant. Moreover, regardless of whether the vest depicted in the photo was the same vest worn during the offense, the photo was relevant to show that defendant had access to the type of body armor described by Alabaudi as having been worn by defendant during the offense. Therefore, the trial court did not abuse its discretion in determining that the evidence was relevant.

The court also did not abuse its discretion by refusing to exclude the photograph under MRE 403. The probative value of the evidence was high because the officer-in-charge testified that bulletproof vests are not commonly worn. Although the vest was recovered in connection with another case involving defendant, that information was not disclosed to the jury. In light of these considerations, the probative value of the photograph was not substantially outweighed by the danger of unfair prejudicial effect.

-3-

Defendant also challenges the admission of the Facebook photograph on the ground that it was not provided to the defense during discovery. MCR 6.201(A)(6) provides that a party must provide all other parties with "a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request." At trial, the prosecutor asserted that she thought she had provided a copy of the photograph to defense counsel, but then conceded that she may not have. After hearing the parties' arguments, the trial court ruled that it would not "preclude [the photo] from being used because of the fact that you didn't have it until now."

MCR 6.201(J) addresses discovery violations in criminal matters. The rule provides:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion.

Thus, "[a] trial court's decision regarding discovery is reviewed for [an] abuse of discretion." *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

The photo in question was obtained from defendant's own Facebook profile. Defense counsel agreed that there was no intent to hide or surprise defendant with the evidence. Because defendant was already familiar with the photo and did not claim to have been surprised by its content, there was no reason to grant a continuance so that defendant could verify the authenticity of the photograph. Moreover, we find no support in the record for defendant's assertion on appeal that admission of the photograph required the defense to rework its strategy. No such claim was made in the trial court. Under the circumstances, the trial court did not abuse its discretion by refusing to exclude the photograph on the basis that it was not timely produced during discovery.

## B. BULLETPROOF VEST

Defendant also challenges the admission of the recovered bulletproof vest. He again argues that a proper foundation for admitting the evidence was not established, and that the evidence was not relevant.

MRE 901 governs the foundational requirements for admitting "real evidence." *People v White*, 208 Mich App 126, 131 n 3; 527 NW2d 34 (1994). MRE 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its

proponent claims." The foundational requirements are met where testimony indicates that an item is what it is purported to be and the item is connected to the accused or the crime. *People v Jennings*, 118 Mich App 318, 322; 324 NW2d 625 (1982); see also *People v Furman*, 158 Mich App 302, 331; 404 NW2d 246 (1987). The identification of the item need not be absolute or certain. *People v O'Brien*, 113 Mich App 183, 204; 317 NW2d 570 (1982).

The trial court admitted the vest pursuant to Alabaudi's testimony, on direct examination by the prosecutor, that the vest looked like the vest defendant was wearing during the shooting. That testimony was sufficient to establish a foundation for admitting the vest into evidence. Defendant's foundational challenge is based on the fact that, on cross-examination by defense counsel, Alabaudi changed his initial testimony and stated that the recovered vest was not the same vest worn by defendant during the offense. We do not consider defense counsel's cross-examination to be an appropriate basis for "undoing" the previously established foundation. The defense did not request an opportunity to voir dire Alabaudi before the court admitted the vest into evidence. By electing to question Alabaudi about the vest after it had already been admitted, defense counsel's cross-examination, and Alabaudi's wavering testimony, should be understood as only affecting the weight of this evidence, not its admissibility.

Moreover, we note that even if a weapon or other instrument found in possession of an accused cannot be sufficiently connected to a crime, if it is similar in form or character to the one actually used, it may be admissible for the purpose of showing availability to the accused of the means of committing the crime in the manner in which it is shown to have occurred. *People v Kramer*, 103 Mich App 747, 758-759; 303 NW2d 880 (1981). Even though Alabaudi was not certain that the vest was the same one worn by defendant during the offense, it was also offered for its relevance in showing defendant's access to and possession of a type of body armor similar to that described by Alabaudi as having been worn during the offense. Considering this additional reason for offering the vest, defendant has not shown that a foundational basis for its admission was lacking, or that the evidence was irrelevant.

## II. JUDICIAL IMPARTIALITY

Defendant next argues that the trial court pierced the veil of judicial impartiality by questioning defendant's father, a defense witness, in a manner suggesting that it was partial to the prosecution. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, a claim of judicial impartiality must be raised before the trial court to preserve the issue for appeal. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011); see also MRE 614(c). Defendant did not object to the trial court's questioning of defendant's father. Accordingly, this issue is unpreserved and our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

During questioning by defense counsel, defendant's father testified that defendant was raised according to Sharia law. Defendant's father explained that defendant married his current wife before defendant's son was born because, under Sharia law, defendant was not allowed to have a child without being married. The trial court thereafter asked additional questions about Sharia law. The court asked whether Sharia law permits a person to have tattoos, to carry a gun,

or to use drugs or alcohol. Defendant's father testified (1) that tattoos are disliked, but not forbidden; (2) that guns are not normally permitted, but are allowed if there is danger; and (3) that drugs or alcohol are never allowed. Defendant argues that the court's questioning went beyond merely attempting to clarify testimony and instead pierced the veil of judicial impartiality.

MRE 614(b) expressly permits a court to "interrogate witnesses, whether called by itself or a party." But a court must be careful not to pierce the veil of judicial impartiality. "A judge's conduct pierces [the veil of judicial impartiality] and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171. This is a "fact-specific analysis[,]" and the pivotal inquiry is whether "the judge's conduct was sufficiently severe and clear so as to create the appearance of bias against the aggrieved party." *Id.* at 171 and n 3.

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions.

*Id.* at 172 (citations omitted). We conclude that the trial court's questioning of defendant's father did not arise to a level of plain error affecting defendant's substantial rights.

When evaluating a judge's conduct in the context of questioning witnesses, the Supreme Court in *Stevens* explained:

> This Court has stated that the central object of judicial questioning should be to clarify. Therefore, it is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information. Judicial questioning, nevertheless, has boundaries. The Michigan Code of Judicial Conduct states:
>
> > A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but the judge should bear in mind that undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on the judge's part toward witnesses . . . may tend to prevent the proper presentation of the cause, or the ascertainment of truth in respect thereto . . . In addressing counsel, litigants, or witnesses, the judge should avoid a controversial manner or tone. A judge should avoid interruptions of counsel in their arguments except to clarify their positions, and should not be tempted to the unnecessary display of learning or a premature judgment. [Code of Judicial Conduct, Canon 3(A)(8).]

It is inappropriate for a judge to exhibit disbelief of a witness, intentionally or unintentionally. It is essential that the judge "not permit his own views on disputed issues of fact to become apparent to the jury." [*Stevens*, 498 Mich at 173-174 (citations omitted).]

The questions in this case appear to have been intended to clarify the testimony of defendant's father regarding how religion may have impacted defendant's upbringing and practices. By bringing up Sharia law, the defense left the jury with the impression that defendant endeavored to conduct himself in accordance with the tenants of Sharia law. It was not inappropriate for the trial court to seek clarification regarding how other conduct in which defendant was known to have engaged was viewed under Sharia law.

To the extent that the court's questioning and tone could be viewed as inappropriately argumentative or hostile, the totality of the circumstances do not reveal that the court improperly pierced the veil of judicial impartiality. First, the objectionable questioning was brief and isolated. It involved three questions to a single witness over the course of a three-day trial. There was no pattern of conduct in which the court signaled any partiality in favor of the prosecution or against defendant. Second, the subject of Sharia Law simply was not a significant factor in the case. To the extent that the questions could be viewed as attacking the credibility of defendant's father, he really had little to offer in the way of a defense. The court's questions did not impact any information critical to the issues before the jury. Third, in its final instructions, the trial court explained to the jury that when it made a comment during trial, it was "not trying to influence your vote or express a personal opinion about the case," and that "[i]f you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion." These instructions reinforced to the jury that any perceived partiality reflected in the court's questioning of defendant's father was not intentional and should be disregarded. Considering the totality of the circumstances, it is not reasonably likely that the court's brief questioning of defendant's father improperly influenced the jury by creating the appearance of advocacy or partiality against defendant.

## III. SENTENCING

### A. SCORING OF THE OFFENSE VARIABLES

Defendant argues that resentencing is required because the trial court erred in scoring offense variables (OV) 4, 14, and 16 of the sentencing guidelines. In *People v Schrauben*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 323170); slip op at 7, lv pending, this Court reiterated the following standards that govern this Court's review of a trial court's scoring decision:

> We review for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). We review de novo whether the factual determinations were sufficient to score OV 4. *Id.* See also *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329), slip op at 19 (holding that because scoring the offense variables remains relevant under *Lockridge*, the standards of review traditionally applied to the trial court's scoring

of the offense variables remain viable). [*People v Schrauben*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 323170), slip op at 7, lv pending.]

Defendant first challenges the trial court's assessment of 10 points for OV 4, which was premised on the trial court's finding that "a serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). In scoring this variable, the fact that treatment has not been sought is not conclusive, but there must be some evidence of psychological injury on the record to justify the assessment of points. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012). A court errs in scoring OV 4 when the record is devoid of evidence that the victim actually suffered a psychological injury. In *Schrauben*, this Court noted that circumstances supporting an assessment of 10 points for OV 4 include those in which the victim suffered "personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *Id.*, ___ Mich App at ___; slip op at 7, quoting *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). This Court upheld an assessment of 10 points where the victim indicated in a letter to the trial court that "the past three years have been a struggle for him psychologically," and the court's observations of the victim's demeanor at trial revealed signs of serious psychological injury. *Id.*

In this case, it was disclosed at sentencing that Alabaudi had told the prosecutor several times that he was fearful, and that he had asked the officer-in-charge several times about providing police protection in the area where he lived because he feared retaliation or other violence. The trial court also observed that at one point Alabaudi had to be forced to come to court to testify and had indicated that he was afraid for his life. According to the prosecutor, Alabaudi responded affirmatively when the prosecutor asked him if he may need treatment. Although defendant points out that Alabaudi attended the funeral of defendant's brother after the offense, that involved an isolated public event. The other evidence that Alabaudi actually experienced extreme fear for his safety and life because of the offense, to the extent that he requested police protection and refused to appear for a court hearing because he was afraid, supports the trial court's factual finding that Alabaudi suffered a serious psychological injury requiring professional treatment. Accordingly, the trial court did not err in assessing 10 points for OV 4.

Defendant also challenges the trial court's assessment of 10 points for OV 14, which was premised on the trial court's finding that defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a). Defendant argues that Hussein was the leader because he used his friendship to gain access to Alabaudi's home. That fact does not necessarily mean that Hussein was the leader, or that defendant was not a leader. It is just as plausible that defendant deliberately enlisted Hussein's assistance because he knew that Hussein's friendship with Alabaudi would enable defendant to gain access to Alabaudi's home. Regardless, because the evidence showed that four offenders were involved in unlawfully entering Alabaudi's home, more than one offender may be determined to have been a leader. MCL 777.44(2). The evidence indicated that defendant was the first and only person to use his weapon, that defendant was the person who verbally threatened Alabaudi and instructed him to leave the house, and that it was defendant who drove the car from the scene. The trial court did not clearly err in finding that a preponderance of the evidence showed that defendant was a leader in this multiple offender situation.

The prosecutor and defense counsel both agreed that 5 points was the appropriate score for OV 16, because evidence supported that property damaged or destroyed during the offense had a value of $1,000 or more, but less than $20,000. MCL 777.46(1)(c). The trial court, however, increased the score to 10 points on the basis of its finding that defendant committed "[w]anton or malicious damage occurred beyond that necessary to commit the crime for which the offender is not charged and will not be charged." MCL 777.46(1)(a). We conclude that the trial court clearly erred in finding that property damage occurred because of conduct for which defendant was not charged, and scoring 10 points on that basis. As the parties pointed out, defendant was convicted of separate offenses for firing his weapon both inside and outside the home. The jury found him guilty of assault with intent to do great bodily harm less than murder for his conduct in firing shots inside the house, and for felonious assault for his conduct in firing shots at the house from the outside as he was leaving. Instead, as the parties agreed, only 5 points should have been scored for OV 16. The scoring error was harmless, however, because it did not affect defendant's guidelines range. A five-point reduction would reduce defendant's total OV score from 85 to 80 points, but that would still leave him in OV Level VI (75+ points). MCL 777.63. Because the scoring error does not affect the appropriate guidelines range, defendant is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

## B. CONSIDERATION OF CONDUCT FOR WHICH DEFENDANT WAS ACQUITTED

Defendant argues that resentencing is also required because, at sentencing, the trial court improperly found him guilty of other criminal offenses of which he was acquitted. Defendant did not object to the trial court's consideration of his other cases at the time of sentencing, or raise this issue in a motion for resentencing. Accordingly, this issue is unpreserved and review is limited to plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004); see also *Carines*, 460 Mich at 763-764.

At sentencing, the trial court noted that it had presided over defendant's trials in two other cases, both of which resulted in acquittals. The court noted that, in one of the cases, the jury reported that it believed that defendant committed the charged offense, but acquitted him because of an inadequate police investigation. The court concluded that, despite the acquittals, it was appropriate to consider defendant's conduct in the other cases in determining an appropriate sentence in this case.

We disagree with defendant that the trial court erred by considering his conduct in the two prior cases. In *People v Golba*, 273 Mich App 603, 614; 729 NW2d 916 (2007), this Court observed:

A sentence is invalid when it is based on improper assumptions of guilt. *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). But this is because a sentence must be based on accurate information. *Id*. A trial court may consider facts concerning uncharged offenses, pending charges, and even acquittals, provided that the defendant is afforded the opportunity to challenge the information and, if challenged, it is substantiated by a preponderance of the evidence. *People v Ewing (After Remand)*, 435 Mich 443, 446; 458 NW2d 880

(1990) (BRICKLEY, J.); *id*. at 473 (BOYLE, J.); *People v Coulter (After Remand)*, 205 Mich App 453, 456; 517 NW2d 827 (1994).

Defendant's reliance on *People v Grimmett*, 388 Mich 590, 608; 202 NW2d 278 (1972), overruled on other grounds in *People v White*, 390 Mich 245, 258; 212 NW2d 222 (1973), is misplaced. In that case, the Court held that it was improper for the trial court to assume at sentencing that the defendant was guilty of a murder charge that was still pending. In the instant case, the trial court was familiar with the other cases against defendant because it presided over the trials in those cases. There was no wrongful assumption of defendant's guilt. The court clearly was aware that defendant was acquitted of the other charges, but permissibly considered the underlying facts in determining an appropriate sentence in this case. Defendant is not entitled to resentencing on this basis.

## C. JUDICIAL FACT-FINDING

Defendant lastly argues that resentencing is required because the trial court engaged in judicial fact-finding when scoring the sentencing guidelines, in violation of his rights under the Sixth Amendment. Because defendant did not challenge the scoring of the guidelines on this basis at sentencing, this issue is unpreserved. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Review is limited to plain error affecting defendant's substantial rights. *Id.*

In *Lockridge*, 498 Mich at 364, our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by as extended by *Alleyne* [*v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 2314 (2013)], applies to Michigan's sentencing guidelines and renders them constitutionally deficient," in violation of the Sixth Amendment, to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . " To remedy this violation, the Court severed MCL 769.34(2) to the extent that it makes a sentencing guidelines range based on judge-found facts mandatory, and held that a guidelines range calculated in violation of *Apprendi* and *Alleyne* is advisory only. *Lockridge*, 498 Mich at 364-365.

In the context of addressing the application of its decision to other cases, the Supreme Court stated that if the facts "admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,] . . . an unconstitutional constraint [will have] actually impaired the defendant's Sixth Amendment right." *Id.* at 395. In such a case, the defendant will have "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id.* Conversely, if the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," the defendant cannot establish any plain error. *Id.* at 394.

In this case, the trial court's scoring of OVs 1, 4, 14, and 16 cannot be upheld on the basis of facts necessarily found by the jury or admitted by defendant. Rather, judicial fact-finding was necessary to score these variables. The scores for these variables increased defendant's total OV

score from 30 points to 85 points, which in turn changed his placement from OV Level III (25 - 34 points) to OV Level VI (75+ points), resulting in a higher guidelines range. MCL 777.63. Because defendant was sentenced before our Supreme Court's decision in *Lockridge*, and his placement in OV Level VI cannot be sustained on the basis of facts admitted by defendant or necessarily found by the jury, defendant has "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395.

Accordingly, we remand this case to the trial court to determine whether it would have imposed a materially different sentence but for the unconstitutional constraint on its discretion because of the mandatory application of the guidelines at the time of defendant's original sentencing. *Id.* at 397. On remand, the trial court shall follow the procedure described in *Lockridge*. Defendant must be given the option of promptly notifying the trial judge that resentencing will not be sought. If notification is not received in a timely manner, the trial court shall continue with the proceeding. If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence defendant. *Id.* at 396-399.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause